HENRY KRITZER v. CASSIUS H. SWEET IMPLEADED WITH DANIEL WYATT.

*Ostensible Partnership.*

· Persons who are not partners may nevertheless be held liable as such for goods furnished them at the request of either, if they have held themselves out as partners, and the bills incurred by one have been acquiesced in by the other.

Error to Newaygo. (Fuller J.) May 13.—Sept 29.

ASSUMPSIT. Defendant brings error. Affirmed.

*Norris & Uhl* for appellant. Liability as a partner arises (1) from being a partner; (2) from holding one's self out as a partner or allowing one's self to be, in such manner as to be estopped from denying it: 1 Colly. Part. 75; Pars. Part. 63; *Dickinson v. Valpy* 10 B. & C. 128; *Benedict v. Davis* 2 McL. 347; if one holds himself out as partner, that does not make him liable as such, except to those who are thereby led to believe he is a partner, and give credit on that account; 1 Smith Lead. Cas. 981; *Wood v. Pennell* 51 Me. 52; *Bowie v. Maddox* 29 Ga. 285; *Stearns v. Haven* 14 Vt. 540; *Crozier v. Kirker* 4 Tex. 252; and the creditor must have knowledge of the holding out, or the representation must have been made to him by the party sought to be charged: *Carter v. Whalley* 1 R. & Ad. 11; Pars. Merc. Law, 167; Pars. Part. 136-7; *Irvin v. Conklin* 36 Barb. 64; *Fitch v. Harrington* 13 Gray 468; but acts and declarations binding the one who makes them cannot affect the other without some confirmation by him: Pars. Part. 139; *Whitney v. Ferris* 10 Johns. 66: *McPherson v. Rathbone* 7 Wend. 216; *Tuttle v. Cooper* 5 Pick. 414; but evidence of public notoriety of the existence of the firm is incompetent, even though brought to the knowledge of the person to be charged: *Grafton Bank v. Moore* 38 Am. Dec. 478; *Smith v. Griffith* id. 639; *Hunt v. Inch* 1 Am. Dec. 555; *Sager v. Tupper* 38 Mich. 258.

*William D. Fuller* for appellee.

SHERWOOD, J. The plaintiff brought an action of assumpsit against the defendants as copartners, to recover of them a

balance claimed to be his due on account for flour and feed sold and furnished to defendants. The declaration was on the common counts, and the plea was the general issue. The cause was tried in the Newaygo circuit before Judge Fuller, by jury, and the plaintiff recovered a judgment for $607.49. The defendant Wyatt did not appear or defend. Sweet brings error.

The plaintiff's account commenced on the 26th day of March, 1874, and continued until the 12th day of May, 1875, consisting of about 280 different items. The record tends to show the following facts: That in 1874 and 1875, defendant Wyatt was engaged in lumbering operations in Newaygo county under four different contracts. No one but Wyatt was interested in any of these contracts. The four contracts were run from the same camps, and all supplies purchased by Wyatt were used in all the jobs indifferently, without separation. The defendant Sweet was the owner of the undivided one-eighth of the timber put in under one of these contracts. Wyatt also owned one-eighth, one Dickinson one-fourth, and Mr. Gray one-half. Wyatt was also part owner of the timber put in under two of the other contracts. For this lumbering Wyatt was paid by the thousand, and defendant Sweet was to furnish one-eighth of the amount due Wyatt from time to time for the lumbering, and the other parties interested, their proportionate shares. The supplies sued for were furnished Wyatt by plaintiff to carry on these lumbering jobs. Some of them also went to Wyatt's family and elsewhere. Martin L. Sweet, defendant Sweet's father, furnished Wyatt the means to operate these various lumbering jobs, and also furnished defendant Sweet the means to pay Wyatt the one-eighth due him for putting in his one-eighth of the logs. Wyatt, under his arrangement with Martin L. Sweet, drew orders or drafts on him, which he accepted and paid. These orders were signed by Wyatt, "Sweet & Wyatt," or "Sweet & Wyatt, by D. Wyatt, agent," or "D. Wyatt, agent," or "D. Wyatt." With these orders he sometimes paid his creditors. Plaintiff had two of these orders given him, but these two were drawn by Wyatt. They were not signed

" Sweet & Wyatt."   M. L. Sweet authorized Wyatt to draw these drafts, and defendant Sweet knew it.   All these orders and drafts, however signed, were Wyatt's personal matters, and were charged him by M. L. Sweet.   The account sued was commenced in the following manner : Wyatt had previously dealt with plaintiff in his individual name.   After making his arrangement with Martin L. Sweet, Wyatt stated that arrangement to plaintiff, and in pursuance of it made his purchases of plaintiff.   Plaintiff did not know what arrangement existed between Wyatt and defendant Sweet.   These things appear from testimony of Wyatt.

Plaintiff testified that Wyatt told him, when opening the account, that he, Wyatt, had formed a copartnership with defendant Sweet, and that Martin L. Sweet was going to furnish the money ; that it was on the faith that Martin L. Sweet would honor Wyatt's draft that he gave the credit ; that he did not care whether Cassius Sweet was worth a dollar or not.   The account was first opened on Kritzer's books in the name of " D. Wyatt."   The only reason plaintiff had for supposing defendant Sweet to be Wyatt's partner was that Wyatt so told him, and that he thought he had seen goods marked Sweet & Wyatt, in Wyatt's wagon.

It further appeared, by way of an attempt by plaintiff to show a partnership between Wyatt & Sweet, or a holding out of Sweet as partner, that it was matter of common notoriety that Sweet & Wyatt were partners ; that defendant Sweet was once introduced by Wyatt to Mr. Utley as his partner, and made no disclaimer of that relation ; that Sweet introduced Wyatt to Crawford Bros. of Grand Rapids as his partner ; that Wyatt used the name of Sweet & Wyatt in dealing with one S. K. Riblet ; that Wyatt was financially irresponsible, and that Kritzer and Martin L. Sweet knew it. Defendant Sweet did not know this fact.

To prove knowledge by defendant Sweet of the fact that Wyatt was trading with the plaintiff in the name of Sweet & Wyatt, the plaintiff was allowed to show that Martin L. Sweet rendered an account of his dealing with Wyatt to Wyatt ; that part of such account was in the handwriting of

defendant Sweet; and that two orders of Wyatt's to plaint-
iff were therein charged to Wyatt.    Testimony was also
offered tending to show that the business to which the account
referred was all transacted in the name of the firm of Sweet
& Wyatt; that the defendants drew notes and drafts in that
name, and not only did business with the plaintiff, but seve-
ral others did the same in that name.    There was testimony
also offered tending to show that after the account in ques-
tion accrued, defendant Sweet ratified it.

It was the defendant's theory, upon the trial of the case,
that no actual partnership existed between the defendants,
and the court so ruled upon the trial, and the plaintiff then
placed his right to recover from the defendants upon the
grounds that they represented themselves to him as partners
or a firm, did business with him and others as a firm, and as
such were reputed, and in that capacity contracted the in-
debtedness for which he claims; and after the account was
made out and presented for payment, the defendant Sweet,
who now contests it, made no objection to it, but ratified it.

It is true that it was not necessary that the defendants
should have been partners, as between themselves, if they had
the goods, to make them liable; but if they held themselves
out as such to the plaintiff, it was sufficient.    It was not neces-
sary that both defendants should have actually made the pur-
chases, if the defendants had made themselves liable in the
partnership relation for what they purchased of the plaintiff;
either defendant could create the liability for the purchases
after the relation was once established in either of the modes
recognized by law.    It was of no consequence what was done
with the goods, as between the defendants, after the goods
were obtained; whether they were used in the family of the
one or the other, or for the benefit of both, there was no firm
in fact interested.    If the defendant Sweet, who now con-
tests the case, ratified the account of the plaintiff in any man-
ner, after it was made, and the amount thereof known to him,
the liability of the other defendant not being contested, then
the plaintiff was entitled to recover.    If the testimony
showed, as to this plaintiff, the defendants made themselves

liable as partners in the plaintiff's dealings with them, though not partners in fact, no other or different evidence would be required to show acquiescence by defendants in an account stated than in case the partnership actually existed, and the acquiescence of one defendant would be binding on both.

The substance of these legal propositions, as also the following directions, were given to the jury by the court in the charge for their *guidance* in considering the facts, viz.: That the burden of proof rested upon the plaintiff to show that the property was sold; that the balance of the indebtedness therefor remains due to the plaintiff and unpaid; that the defendants did the business with the plaintiff under the firm name; that defendant Sweet knew it, and did nothing to stop the business, and thereby recognized his liability.

Under the testimony given we think the charge was correct, and the case properly submitted to the jury thereunder, and unless some error has been committed in admitting or rejecting the testimony, the judgment must stand. There was sufficient testimony in the case tending to show that Sweet allowed himself to be held out to the plaintiff as a copartner with Wyatt, to go to the jury; and this is all that is necessary to support the verdict upon this point in this Court, if the testimony was properly admissible. The weight of testimony was for the consideration of the jury upon the *merits*, or for the circuit judge to consider on a motion for a new trial. And it will not do to say that there was no testimony tending to show that Sweet did not know that he was thus held out, represented and regarded, so long as he allowed himself to be introduced as a partner of Wyatt, and himself introduced Wyatt to business men as his partner, consented to the firm name, and allowed the use of it in his business done by Wyatt; saw his paper afloat containing the signature of Sweet & Wyatt, and did not seek to stop its use till disaster threatened.

Counsel for defendant Sweet, assuming that there was not sufficient testimony upon the question of joint liability to go to the jury, made many objections, which would not have been offered under a different theory, and we do not,

therefore, consider the objections in the order in which the alleged errors are assigned. We have examined them all carefully, and all that counsel have said in their briefs, but have found no error which could prejudice the rights of defendant Sweet upon the trial, and there is no occasion for considering the rights of the other defendant, as he does not complain, and has not appealed.

It is difficult to separate the sayings and doings of Martin L. Sweet, the father of Cassius, from the transactions of Sweet & Wyatt. He it was who suggested the mode and manner in which Wyatt and Cassius should do business, and which was assented to and adopted by them, and he also furnished much of the means with which the business was done. It is possible defendant Sweet may be wronged by the judgment rendered, but we see no way we can aid him in his efforts to correct it upon this record, and

The judgment must be affirmed.

The other Justices concurred.